IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CHRISTINE M. BUBE and CONNIE HEDRINGTON,

                              Plaintiffs,                          OPINION and ORDER

          v.
                                                                   22-cv-745-jdp
ASPIRUS HOSPITAL, INC,

                              Defendant.

---

Plaintiffs Christine M. Bube and Connie Hedrington were nurses for defendant Aspirus Hospital, Inc. until both were terminated in December 2021 for refusing to be vaccinated for COVID-19. Plaintiffs contend that their termination was religious discrimination in violation of Title VII of the Civil Rights Act and that Aspirus violated the Americans with Disabilities Act (ADA) by both mandating the vaccine and requiring employees to submit to COVID testing.

Aspirus moves to dismiss all claims. Dkt. 7. As for the Title VII claim, Aspirus contends that neither plaintiff ever identified a religious belief that conflicted with the vaccine mandate. As for the ADA claims, Aspirus contends that the ADA doesn't apply to the vaccine mandate and that plaintiffs didn't exhaust their administrative remedies before challenging the testing requirement.

This court has issued two other decisions addressing Title VII and ADA claims brought by employees challenging Aspirus's COVID vaccine and testing requirements. *Petermann v. Aspirus, Inc.*, No. 22-cv-332-jdp, 2023 WL 2662899 (W.D. Wis. Mar. 28, 2023); *Passarella v. Aspirus, Inc.*, No. 22-cv-287-jdp, 2023 WL 2455681 (W.D. Wis. Mar. 10, 2023). In both cases, the court held that Aspirus did not violate Title VII by terminating employees who objected to

receiving the vaccine on personal and medical grounds while using general religious phrasing, that Aspirus did not violate the ADA by imposing a vaccine mandate, and that the plaintiffs didn't exhaust their administrative remedies on their challenge to the vaccine testing because none of the plaintiffs mentioned the testing requirement in their administrative charge.

This court's decisions in prior cases aren't binding, even on this court. But the reasoning of *Passarella* and *Petermann* compels dismissal of plaintiffs' Title VII claim. Like the plaintiffs in those cases, Bube and Hedrington used some vaguely religious language when they informed Aspirus that they objected to receiving the vaccine. But the more specific language in their objections revealed that their objections were really based on their personal views about the necessity, efficacy, and safety of the vaccine. Plaintiffs didn't identify any religious beliefs that conflicted with Aspirus's vaccine mandate, so Aspirus's decision to terminate plaintiffs wasn't religious discrimination.

*Passarella* and *Petermann* also compel dismissal of the ADA claims. Plaintiffs don't challenge the court's previous conclusion that the ADA doesn't apply to vaccine mandates. And like the plaintiffs in the other cases, Bube and Hedrington didn't challenge the testing requirement in their administrative charges.

The court will grant Asprius's motion to dismiss.

BACKGROUND

Much of the background in this case is the same as the background in *Petermann* and *Pasarella*, so it isn't necessary to repeat it here. The most important information for the purpose of Aspirus's motion are the requests that Bube and Hedrington submitted to Aspirus to be excused from the vaccine mandate. Plaintiffs did not include that information in their

complaint; they simply alleged that they asked for a religious exemption and later filed administrative appeals when Aspirus denied the requests. Dkt. 1, ¶¶ 23–24, ¶¶ 43–44. But Aspirus submitted plaintiffs' requests and appeals with its motion to dismiss, Dkt. 8-1–8-4, and the court may consider those documents without converting the motion to dismiss into a motion for summary judgment because plaintiffs referred to the documents in their complaint and the documents are central to plaintiffs' claims. *See Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014). Plaintiffs do not object to considering these documents.

Bube submitted a request for a religious exemption in November 2021. Under the heading for "Description of beliefs," Bube wrote the following:

> I am baptized and a practicing Catholic. I . . . had Covid [in] September 2020. Six months after having Covid, I still had antibodies. This is the same affect the Covid vaccine has. I have made an informed judgement that I should not receive the Covid vaccine as I have acquired a natural immunity. I feel this is no different than varicella. I was infected with varicella when I was 7 years old. I was not required to get a varicella vaccine. I am following my conscience of refusing the Covid vaccine at this time. According to the Catholic Church, I am required to follow my judgement of conscience. The Catholic Catechism clearly states: "Man has the right to act in conscience and in freedom so as personally to make moral decisions. He must not be forced to act contrary to his conscience. Nor must he be prevented from acting according to his conscience, especially in religious matters."

Dkt. 8-1. Under the heading, "Consistency rationale," Bube wrote, "See above." *Id.* After Aspirus denied Bube's request for an exemption, she filed an administrative appeal that included the following information:

> I have done a lot of reading on the Covid vaccine. There are many unanswered questions in regards to this vaccine. There is a known vaccine failure which doesn't prevent transmission. I have personally observed patients who have been vaccinated who have still contracted and died of COVID. If I accepted this vaccine, I would be doing so hastily, which would make me morally careless. As I stated in my original submission, getting the vaccine would

> corrupt my conscience. My sincerely held religious belief is that I
> have the right to act in conscience and freedom so as to make
> moral decisions. Psalm 118:8 tells us it is better to take refuge in
> the Lord than to trust in humans. I do my best to eat healthy,
> remain active, attend mass and pray regularly to keep my God-
> given mind, body and soul healthy. With its failure rates, vaccine
> injuries, and unknown long term effects, I would be going against
> what God has intended for me.

Dkt. 8-2.

Hedrington submitted a request for a religious exemption, also in November 2021.

Under the heading "Description of beliefs," Hedrington wrote:

> My body is my own. I object to other people deciding what is best
> for me. It is my body and my choice, not yours or anyone else's. I
> sincerely believe It is my God given right to choose for myself
> what vaccines I will or will not take and I choose not to take the
> covid vaccine. I have been informed and know the risks and
> benefits associated with the vaccine.

Dkt. 8-3. Under the heading "Consistency rationale," Hedrington wrote:

> I have had the flu, gotten sick and survived. I have received the
> flu shot since then. I have also had joint pain and fatigue since
> receiving the flu shot. My mother is 87 and never had a flu shot
> and never experienced these symptoms. Lyme's tests and others
> have been negative. I have had covid, therefore I may have natural
> immunity and am less likely to spread the virus. The long term
> effects from the covid vaccine are not yet available. I respectfully
> decline, I am not willing to risk an adverse event related to the
> covid vaccine.

*Id.* After Aspirus denied Hedrington's request for an exemption, she filed an administrative

appeal that included the following information:

> God is my creator. He created m[e] upon conception and
> designed my body and immune system in the womb. God made
> me in his image and has given me life. He created me perfectly! I
> trust in God completely and cannot accept this vaccine in my
> body. This is not what God desires for me and it would be a sin
> based on my faith and belief in God. Accepting this vaccine goes
> against my deeply held trust in God and . . . my sincerely held
> religious belief. I have a very spiritual relationship with the Jesus,

> God and the Holy Spirit. He knows my name and my path, and
> he has promised me a place in heaven. I have no doubt, and I
> know this is true because I have spoken directly with Jesus, and I
> have seen his face.

Dkt. 8-4.

Aspirus rejected both appeals and terminated both plaintiffs for failing to comply with Aspirus's vaccine mandate.

ANALYSIS

Plaintiffs are asserting claims under both Title VII and the ADA, and Aspirus seeks dismissal of all these claims. The question on a motion to dismiss is whether the plaintiff provided the defendant with fair notice of her claims and alleged facts plausibly suggesting that she is entitled to relief. *McCray v. Wilkie*, 966 F.3d 616, 620 (7th Cir. 2020).

**A.  Title VII**

Title VII prohibits an employer from discharging an employee because of the employee's religion, which includes the employee's religious beliefs. *See* 42 U.S.C. § 2000e-2(a)(1) and § 2000e(j); *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 771–72 (2015). In *Adeyeye v. Heartland Sweeteners, LLC*, the court set forth three elements for a religious discrimination claim under Title VII: (1) the observance or practice that conflicted with an employment requirement is religious in nature; (2) the employee called the religious observance or practice to the employer's attention; and (3) the religious observance or practice was the basis for the employee's discharge or other discriminatory treatment. 721 F.3d 444, 449 (7th Cir. 2013). This court applied that test in *Petermann* and *Passarella*, and the parties have relied on the test in their briefs in this case.

5

Shortly after the parties completed briefing, the court of appeals issued a decision in which it modified the elements of a religious discrimination claim to incorporate guidance from *Abercrombie & Fitch*. Specifically, the court of appeals held that an employee must prove the following things about the belief or conduct that the employee contends was the basis for discrimination: (1) it is religious in nature; (2) it is based on a sincerely held religious belief; (3) it conflicted with an employment requirement; and (4) it was the basis or a motivating factor for the employee's discharge or other discriminatory treatment. *Kluge v. Brownsburg Community School Corp.*, 64 F.4th 861, 883 (7th Cir. 2023).[1]

Neither side submitted supplemental briefs to address the new standard, but the court concludes that they aren't necessary. The parties' current arguments fit comfortably within the new standard. The key dispute is still the same as it was in *Passarella*, which is whether plaintiffs have identified an objection to the vaccine mandate that is religious in nature.

*Passarella* forecloses plaintiffs' Title VII claim. The case involved the claims of three employees whom Aspirus fired for refusing to be vaccinated. Megan Passarella included the following information in her request for an exemption:

- She is a Christian.

- "I believe that I must trust God with my body (His temple) and that he will provide for me and protect me as he has already proven time and time again during my life."

---

[1] Three months later, the court of appeals vacated its decision in light of *Groff v. DeJoy*, 143 S. Ct. 2279 (2023), which articulated a new understanding of an employer's defense under § 2000e(j) that accommodating the employee's religion would impose an "undue hardship" on the employer. *Kluge v. Brownsburg Community School Corp.*, No. 21-2475, 2023 WL 4842324, at *1 (7th Cir. July 28, 2023). Aspirus's motion doesn't raise the undue hardship defense, and the court of appeals did not express disapproval of its articulation of the elements of a prima facie case, so this court will continue to follow that aspect of *Kluge*.

- She makes "shrewd decisions regarding the vaccines [she] put[s] into [her] body" and she had refused other vaccines when there was "evidence of adverse, debilitating injuries resulting from receiving the vaccine."

- "[I]t goes against my conscience to receive [the vaccine]; therefore, I abide by that, as I know it is a message from God. James 4:17 states that failing to obey our conscience is a sin. Therefore, this means receiving the vaccine would not be acting in accordance with God. It would be a sin for me to receive it."

*Passarella*, 2023 WL 2455681, at *2–3. Sandra Dottenwhy included the following information in her request:

- She is a Christian.

- "I feel [the vaccine] was developed in a rush. I don't trust the information and long-term effects. Therefore I believe this is not right for me to put this vaccine into my body."

- "I also feel that it's my body and no one has the right to tell me what to do with my personal being. I have prayed about this and have asked GOD for guidance, and believe that HE is with me on this decision."

- "I have prayed long and hard about this and I am fearful of the effects. The Bible says: My body is a temple of the Holy Spirit and to present my body as a living sacrifice, Holy and acceptable to God."

*Id.* at 2. Cynthia Clutter included the following statement in her request:

> I oppose all vaccines. My children are not vaccinated. My husband has never been vaccinated. My son is not circumcised. We are the way God made us. It is my right [as] an American and a Christian to remain that way. I feel forcing one to get a vaccine again[st] their will is a complete violation of my rights.

*Id.* at 3.

The court concluded that Clutter had pleaded a religious objection because it appeared to be "rooted in her belief that she must remain as God made her." *Id.* at 7. But the court dismissed the other plaintiffs' Title VII claims, reasoning that their objections were based on "medical judgments about the safety of the vaccine, not matters of religious belief." *Id.* at 6. Although Passarella and Dottenwhy "couched their requests in religious terms, . . . the use of

religious vocabulary does not elevate a personal medical judgment to a matter of protected religion." *Id.* The bottom line was that neither plaintiff identified a religious belief that would conflict with taking the vaccine. *Id.* at 5.

The same reasoning this court applied to Passarella and Dottenwhy's requests applies equally to the requests submitted by Bube and Hedrington. The only specific objections that Bube and Hedrington raised to the vaccine had nothing to do with religion. Bube wrote that she "should not receive the Covid vaccine as [she has] acquired a natural immunity" and that she had concerns about "failure rates, vaccine injuries, and unknown long term effects." Hedrington wrote, "It is my body and my choice, not yours or anyone else's," and that she was "not willing to risk an adverse event related to the covid vaccine." These are objections about personal autonomy, as well as the safety and efficacy of the vaccine. They are not religious objections. As in *Passarella*, plaintiffs' objections were intermingled with moral and religious language that taking the vaccine would violate their conscience, be inconsistent with God's wishes, and even qualify as a sin. But like Passarella and Dottenwhy, plaintiffs did not tie those general statements to any to particular religious belief or practice that was inconsistent with taking the vaccine.

Plaintiffs include new objections in their complaint. Specifically, Hedrington alleges that "it would be against God's wishes to take the Covid-19 vaccine because it would make Plaintiff Hedrington complicit or cooperating with abortion due to aborted fetal cells being used in the development of the Covid-19 vaccine." Dkt. 1, ¶ 42.[2] Other courts have held that a general objection to abortion is not a religious objection to the vaccine when the objection

---

[2] Plaintiffs also include numerous new allegations about the safety and efficacy of the vaccine in their complaint, but those allegations do not support the existence of a religious objection.

isn't tied to a particular religious belief. *See, e.g.*, *Kiel v. Mayo Clinic Health System Southeast Minnesota*, No. 22-1319, 2023 WL 5000255, at *8 (D. Minn. Aug 4., 2023); *Winans v. Cox Automotive, Inc.*, No. 22-3826, 2023 WL 2975872, at *4 (E.D. Pa. Apr. 17, 2023). But even if the court assumes that Hedrington's objection about abortion is based on a religious belief, that objection was not presented to Aspirus, so it could not have been "the basis or a motivating factor for the employee's discharge," which is the fourth element under *Kluge*.

Plaintiffs raise two other issues in support of their Title VII claim. First, they challenge the process that Aspirus used to determine whether employees had a religious objection to the vaccine. They cite language in Aspirus's instructions for submitting a request, stating that employees should identify "a primary or single reason or sincerely held belief related to your exemption to the vaccine," that employees who cite scripture should explain how the passage relates to vaccination, and that employees should not rely on misinformation in their requests. Dkt. 11, at 13–14. Plaintiffs contend that the instructions "skewed the process to make it difficult or impossible to actually get a religious exemption." *Id.* at 15. The court declines to consider this contention because plaintiffs fail to explain how the instructions adversely affected them. Plaintiffs don't allege either that the instructions deterred them from including certain information in their requests or that Aspirus denied their requests for failing to follow the instructions.

Second, plaintiffs say that "Defendant sought no clarification of Plaintiff's beliefs, engaged in no interactive process with Plaintiff to learn of their actual religious beliefs, or ask any questions of the references to God, prayer, the Holy Spirit, or Plaintiff's conscience." *Id.* at 31. Plaintiffs don't clearly explain the argument they are making, but the court understands it to be that Aspirus should have identified specific deficiencies with plaintiffs' requests if

Aspirus believed that the requests weren't adequate, and then allowed plaintiffs another opportunity to clarify those beliefs.

This argument fails. Regulations interpreting the ADA require employees to "engage with the employee in an interactive process to determine the appropriate accommodation under the circumstances." *Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276, 292 (7th Cir. 2015) (citing 29 C.F.R. § 1630.2(o)(3)). But plaintiffs cite no authority holding that a requirement to engage in an interactive process applies in the context of Title VII. Some authority suggests that the ADA and Title VII aren't identical in this respect. *See Miller v. Port Authority of New York and New Jersey,* 788 Fed. Appx. 886, 890 (3d Cir. 2019) ("[W]e have not yet imposed a . . . duty [to engage in an interactive process] on employers for Title VII religious accommodation claims.").

Even if the ADA requirement applied in the context of Title VII, it would not require Aspirus to help plaintiffs craft a religious objection. In the ADA context, the requirement applies to "determin[ing] the appropriate accommodation," *Stern,* 788 F.3d at 292 *not* to identifying a disability that requires an accommodation. So it follows that Aspirus had no duty to help plaintiffs identify what their religious beliefs are. Aspirus gave plaintiffs two opportunities (the request for an exemption and the appeal) to explain why the vaccine was inconsistent with their religious beliefs. That was sufficient.

The court will dismiss plaintiffs' Title VII claims for failure to state a claim upon which relief may be granted.

## B.  ADA

Plaintiffs contend that Aspirus's COVID testing and vaccine requirements violated 42 U.S.C § 12112(d)(4)(A), which prohibits employers from "requiring a medical examination"

10

unless certain criteria are met. Aspirus seeks dismissal of both claims, but for different reasons. Aspirus contends that the vaccination doesn't qualify as an "examination," so § 12112(d)(4)(A) doesn't apply. Aspirus doesn't challenge the merits of the testing claim, but Aspirus says that the claim must be dismissed because plaintiffs didn't exhaust their administrative remedies. Aspirus attaches the administrative charges that plaintiffs filed and points out that neither charge says anything about Aspirus's COVID testing requirement. Dkt. 8-5 and Dkt. 8-7.

The court decided these issues in *Passarella* as well. Section 12112(d)(4)(A) does not apply to the COVID vaccination, and a failure to challenge the testing requirement in the administrative charge requires dismissal for failure to exhaust. *Passarella*, 2023 WL 2455681, at *7–8. Plaintiffs don't address either argument in their brief, so the court will dismiss the ADA claims on these grounds.

The general rule is that the plaintiff should have an opportunity to amend her complaint after a dismissal to fix the defects identified by the court. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015). But in this case, the problem isn't that plaintiffs failed to plead enough facts; the problem is that plaintiffs' own statements show that they are not entitled to relief. In that situation, amendment would be futile. In any event, plaintiffs don't ask for permission to file an amended complaint in the event that the court grants Aspirus's motion to dismiss. So the court will dismiss the complaint and direct the clerk of court to close this case.

ORDER

IT IS ORDERED that Aspirus Hospital, Inc's motion to dismiss, Dkt. 7, is GRANTED. Plaintiffs' Title VII claims and ADA claim challenging the vaccination requirement are

DISMISSED with prejudice for failure to state a claim upon which relief may be granted. Plaintiffs' ADA claim challenging the COVID testing requirement is DISMISSED without prejudice for plaintiffs' failure to exhaust their administrative remedies. The clerk of court is directed to enter judgment accordingly and close this case.

Entered September 15, 2023.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge